FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com
DarrasLaw
3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121

Attorneys for Plaintiff
DAVID WIKSTROM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WIKSTROM,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq*. (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.



DarrasLaw

3. Plaintiff is informed and believes and thereon alleges that the Veolia Energy North America, LLC Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by Veolia Energy North America, LLC to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, DAVID WIKSTROM ("Plaintiff" and/or "MR. WIKSTROM"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that Defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the State of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of VEOLIA ENERGY NORTH AMERICA, LLC, its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number FLK 980109 that had been issued by Defendant LINA to Veolia Energy North America, LLC to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff. A copy of the subject policy is attached hereto as Exhibit "A".

8. The Plan provides a monthly benefit equivalent to sixty percent (60%) of MR. WIKSTROM's Covered Earnings less Other Income Benefits following a 180 day Elimination Period.

9. The Plan defines "Disability" as: "The Employee is considered Disabled if, solely, because of Injury or Sickness, he or she is:

- Unable to perform the material duties of his or her Regular Occupation; and
- Unable to earn 80% or more of his or her Indexed Earnings from working in your Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

- Unable to perform the material duties of any occupation for he or she is, or may reasonably become, qualified based on education, training or experience; and
- Unable to earn 80% of more of his or her Indexed Earnings."

10. The Plan provides monthly benefits to MR. WIKSTROM's Social Security Normal Retirement Age.

11. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group life insurance policy number FLX 980256 that had been issued by Defendant LINA to Veolia Energy North America, LLC to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff. A copy of the subject policy is attached hereto as Exhibit "B".

12. The Group Life Insurance Plan has Waiver of Premium coverage if the Employee is Disabled as defined by the Plan.

13. On or about February 18, 2013, Plaintiff underwent an MRI of his lumbar spine. The significant abnormal findings included:

- Multilevel degenerative disk disease most pronounced in the lower lumbar spine.
- Epidural lipomatosis in the lower lumbar contributes to spinal narrowing.
- Most significant central narrowing at L3-4 and L4-5 where there is direct impingement of the cauda equine
- L4-5 right foraminal disk herniation; facet arthrosis causing moderate to



DarrasLaw

severe right foraminal narrowing; moderate left foraminal narrowing at this level.

- Annular tears from L3-4 to L5-S1.

14. On or about March 16, 2013, Plaintiff became disabled as defined by the Long Term Disability and Group Life Insurance Plans.

15. At the time of his disability, Plaintiff was working as a Building Technician.

16. MR. WIKSTROM timely filed a claim for disability benefits with Defendant.

17. On or about August 20, 2013, Plaintiff underwent a CT of his lumbosacral spine. The impression has degenerative changes of the lumbar spine combined with epidural lipomatosis which results in spinal canal narrowing, lateral recess and foraminal stenosis from L3-4 through L5-S1.

18. On or about September 23, 2013, Plaintiff underwent an evaluation with Dr. Jerrold Sherman, MD. Dr. Sherman's impression was: (1) Complaints of low back pain with advanced degenerative arthritis involving the L4-5 and L5-S1 levels, status post-surgical discectomy; (2) Complaints of intermittent bilateral foot numbness. Dr. Sherman opined that Plaintiff's "degenerative arthritis in the lower lumbar spine to progressively worsen and he should have a 50% decrease in activities levels over the next two years."

19. On or about October 11, 2013, Plaintiff consulted with Dr. James Forage regarding his low back pain. Plaintiff reported no improvement despite two epidural steroid injections. Dr. Forage discussed possible surgical options but informed Plaintiff that surgery would not be possible until his blood platelet count increased.

20. On or about November 20, 2013, Plaintiff's claim for Long Term Disability benefits was approved.

21. On or about January 22, 2014, Defendant approved Plaintiff's claim for Waiver of Premium coverage for the Group Life Insurance Policy.

22. On or about April 7, 2014, Plaintiff's pain management physician, Dr. Jose Reyes noted Plaintiff's pain complaints continued despite his pain medication regimen. Plaintiff reported his current pain level as 7/10.

DarrasLaw

23. On or about June 3, 2014, Plaintiff followed up with Dr. Reyes. His pain complaints remained the same as he continued to report continuous, throbbing, shooting, stabbing, aching pain in his lumbar spine which radiated to his lower extremities.

24. On or about September 29, 2014, Dr. Reyes, completed a Physical Capacities Evaluation form. Dr. Reyes noted restrictions in Plaintiff's ability to sit, stand and walk. Dr. Reyes also confirmed that Plaintiff's pain complaints would prevent him from working full time in a sedentary position.

25. On or about January 6, 2015, Plaintiff consulted with Wesley Lyon, DPM regarding numbness, tingling and burning pain in his feet. Dr. Lyon noted severe osteoarthritis of midfoot secondary to trauma, spinal arachnoiditis, spinal stenosis, crush injury to right foot with neuropraxia, painful keratoma, onychodystrophy of his right great toes, history of restless leg syndrome and history of autoimmune thrombocytopenia.

26. On or about January 13, 2015, Plaintiff followed up with Dr. Reyes. Plaintiff reported his current pain level was 10/10.

27. On or about March 9, 2015, Plaintiff returned to Dr. Reyes for his ongoing and chronic back pain. Plaintiff reported a current pain level of 9/10 and ongoing associated symptoms of radicular bilateral leg pain, numbness and weakness in both legs and sleep difficulties.

28. On or about April 7, 2015, Plaintiff followed up with Dr. Reyes. Plaintiff reported his current pain level as 9/10. Plaintiff's medications included Neurontin and OxyContin. Plaintiff reported his discomfort was most prominent in his upper, mid and lower lumbar spine. Plaintiff reported the pain radiated to his posterior thighs, calves and feet. Plaintiff reported the pain was worse with sitting, standing, walking, lifting, housework and movements.

29. On or about April 9, 2015, Defendant denied Plaintiff's claim for Long Term Disability benefits beyond September 14, 2015.

30. On or about April 16, 2015, Defendant denied Plaintiff claim for Waiver of



DarrasLaw

Premium coverage under the Group Term Life Insurance Policy.

31. On or about May 6, 2015, the Social Security Administration issued a Fully Favorable Decision approving Plaintiff's claim for Social Security disability benefits. The award of benefits was based on the Social Security Administration's finding that Plaintiff had the following severe impairments: hypertension, sinus tachycardia, degenerative disc disease of the lumbar spine, liver disease, idiopathic thrombocytopenic purpura, chronic pain disorder and osteoarthritis of the right foot.

32. On or about September 22, 2015, Plaintiff followed up with Dr. Reyes regarding his ongoing chronic pain complaints. Plaintiff reported his pain at its worst was a 10/10 and at best a 5/10. Plaintiff reported the pain worsened with sitting, standing, walking, lifting, housework and movements. He noted some pain relief with rest and narcotic pain medications.

33. On or about October 15, 2015, Dr. Joseph Reyes prepared a letter confirming Plaintiff's diagnoses and treatment:

- "At this time, he continues to suffer from chronic pain, affecting his back and legs. This is due to his known significant lumbar spinal stenosis, creating persistent lumbar radiculopathy."
- "Further complicating his condition is his blood disorder, which unfortunately limits his candidacy for interventional procedures, including any neuraxial procedures for pain, as well as any potential spinal surgery."

34. On or about November 16, 2015, Plaintiff appealed the denial of his Long Term Disability and Waiver of Premium claims.

35. On or about June 8, 2016, Defendant denied Plaintiff's appeal and reaffirmed the prior denial of the Long Term Disability and Wavier of Premium benefits.

36. On or about September 17, 2016, Plaintiff underwent an updated MRI of his lumbar spine. The abnormal findings continued to evidence advanced degenerative disc space narrowing at L3-4, L4-5 and L5-S1.

37. On or about November 30, 2016, Plaintiff consulted with Dr. Damon

DarrasLaw

Adamany regarding his left cubital and carpal tunnel syndrome.

38. On or about December 7, 2016, Plaintiff underwent a Functional Capacity Evaluation with Richard Randall, PT. Mr. Randall's conclusion was "based upon review of medical records, my observation, the results of my objective FCE and Mr. Wikstrom's testing performance, it is my professional opinion that, to a reasonable degree of medical probability, Mr. Wikstrom would be physically unable to perform a job description at the sedentary work level on a full-time basis."

39. On or about February 23, 2017, Plaintiff, through counsel, timely requested the voluntary appeal review of his claim.

40. On or about March 2, 2017 Defendant advised that a further appeal review would not be conducted.

41. Based upon the substantial medical evidence in the possession of LINA at the time of the denial, the decision to deny disability insurance benefits was wrongful and contrary to the terms of the Plan.

42. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about September 14, 2015, to the present date.

43. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

44. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan definition of disability and consequently he is entitled to all benefits from the Plan to which he might be entitled while receiving disability benefits including reimbursement of all expenses and premiums paid for such benefits from the termination of benefits to the present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:



DarrasLaw

1. An award of benefits in the amount not paid Plaintiff beginning on or about September 14, 2015, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which he might be entitled while receiving disability benefits including reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff is entitled to future disability payments/benefits so long as he remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: April 11, 2017

DarrasLaw

PHILLIP S. BATHER
Attorneys for Plaintiff



DarrasLaw